Slip Op 13 - 42

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

| | |
|---|---|
| ADVANCED TECHNOLOGY & MATERIALS CO., LTD., BEIJING GANG YAN DIAMOND PRODUCTS COMPANY, and GANG YAN DIAMOND PRODUCTS, INC., | : : : : : : |
| Plaintiffs, | : Before: R. Kenton Musgrave, Senior Judge : |
| BOSUN TOOLS GROUP CO. LTD, | : Consol. Court No. 09-00511 : |
| Plaintiff-Intervenor, | : : |
| v. | : : |
| UNITED STATES, | : : |
| Defendant, | : : |
| and | : : |
| DIAMOND SAWBLADES MANUFACTURERS COALITION, WEIHAI XIANGGUANG MECHANICAL INDUSTRIAL CO., LTD., and QINGDAO SHINHAN DIAMOND INDUSTRIAL. CO., LTD., | : : : : : |
| Defendant-Intervenors. | : : |

## OPINION

[Entries of merchandise covered by less-than-fair-value determination enjoined from liquidation *pendente lite*; temporary restraint against revocation of antidumping duty order dissolved.]

Dated:  March 28, 2013

*Jeffery S. Neeley* and *Stephen W. Brophy*, Barnes, Richardson & Colburn, of Washington DC, for the plaintiffs.

   *Melissa M. Devine*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington DC, for the defendant.  With her on the brief were *Stuart F. Delery*, Principal Deputy Assistant Attorney General; *Jeanne E. Davidson*, Director, and *Franklin E. White*, *Jr.*, Assistant Director.  Of counsel on the brief was *Nathaniel J. Halvorson*, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, joined at the hearing by *Michele D. Lynch*, of that office.

   *Daniel B. Pickard* and *Maureen E. Thorson*, Wiley, Rein & Fielding LLP, of Washington DC, for the defendant-intervenor Diamond Sawblades Manufacturers Coalition.

   Musgrave, Senior Judge:  Familiarity with prior proceedings is presumed.[1]  Recent notice from the United States Department of Commerce, International Trade Administration ("Commerce") of a final determination pursuant to section 129 of the Uruguay Round Agreements Act prompted the defendant-intervenor Diamond Sawblades Manufacturers Coalition ("DSMC") to move for a temporary restraining order and preliminary injunction in this court.  *See* Mem. from Gary Taverman, Sr. Advisor for Antidumping and Countervailing Duty Operations, to Paul Piquado, Assistant Secretary for Import Administration, re: Final Results of the Proceeding under Section 129 of the Uruguay Round Agreements Act: Antidumping Measures on Diamond Sawblades and Parts Thereof from the People's Republic of China (Mar. 4, 2013) ("final section 129 determination").

   The underlying case is currently on second remand to Commerce for reconsideration of whether the "AT&M entity," a collapsed group of companies (including the plaintiffs) that are

---

   [1]   *See* Slip Ops. 11-122 (Oct. 12, 2011); 12-147 (Nov. 30, 2012).  The litigation is a consolidation of challenges to the final less than fair value ("LTFV") determination in the antidumping duty investigation into imported diamond sawblades and parts thereof from the People's Republic of China ("PRC"). *Diamond Sawblades and Parts Thereof from the People's Republic of China*, 71 Fed. Reg. 29303 (May 22, 2006) (*inter alia* final LTFV determination); *Diamond Sawblades and Parts Thereof from the People's Republic of China*, 71 Fed. Reg. 35864 (June 22, 2006) (amended final LTFV determination); *see also Diamond Sawblades and Parts Thereof from the People's Republic of China and the Republic of Korea*, 74 Fed. Reg. 57145 (Nov. 4, 2009) (antidumping duty orders).

engaged in producing and/or exporting diamond sawblades and parts thereon from the PRC subject to the governing antidumping duty order, is entitled to a separate rate distinct from that of the PRC-wide rate.   Commerce's final section 129 determination results from an adverse World Trade Organization panel decision that was filed on behalf of the AT&M entity by the Government of the PRC against the "zeroing" methodology employed in the U.S. diamond sawblades dumping investigation.  *See United States -- Anti-Dumping Measures on Certain Shrimp and Diamond Saw Blades from China*, WT/DS422/R paras. 2.4, 2.6 & n.19 (June 8, 2012).  The final section 129 recalculation of the AT&M entity's margin without zeroing methodology produced a *de minimis* dumping margin for the AT&M entity.  The section 129 determination also indicates Commerce's final decision on revocation as to future entries once the determination is implemented upon instruction by the United States Trade Representative.  With revocation, Commerce in the ordinary course of administration will also order U.S. Customs and Border Protection ("CBP") to liquidate or lift the suspension of liquidation on entries of AT&M-entity subject merchandise..

DSMC seeks (1) enjoinder against lifting the suspension of liquidation and (2) enjoinder of exclusion or revocation of the AT&M entity from the ambit of the antidumping duty order.   Commerce and CBP being presently restrained via order of March 6, 2013, the question is what restraint is necessary *pendente lite* this action.  Enjoinder requires weighing (1) the threat of immediate and irreparable harm if preliminary relief is not granted, (2) the movant's likelihood of success on the merits, (3) the balance of the hardships, and (4) the public interest.  *See*, *e.g.*, *PPG Industries, Inc. v. United States*, 14 CIT 18, 729 F. Supp. 859 (1990).  Any single factor may preclude injunction.  *See FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).

*Discussion*

The circumstances here are similar to those relating to the preliminary injunction obtained in the litigation over imports of similar subject merchandise from Korea.  *See Diamond Sawblades Mfrs. Coal. v. United States*, Slip Ops 11-117 (Sep. 22, 2011), 11-137 (Nov. 3, 2011), and 12-46 (Mar. 29, 2012).  Here, only the AT&M entity is being excluded from the antidumping order, which is not being revoked in its entirety.  The court finds the rationale of those decisions instructive in this instance.

A

An affirmative LTFV investigation normally has two effects: (1) to establish that subject merchandise is subject to, and will be subject to, an antidumping duty order for at least five years, and (2) to establish cash deposit rates that will prevail until an administrative review is completed or the deadline for review passes without a request therefor.  It is with the first of these that DSMC is presently concerned.  DSMC argues Commerce's and CBP's intended acts would moot the duration of the antidumping duty order and render the court unable to grant the relief to which it is entitled.  Therefore, according to DSMC, injunction is necessary to prevent revocation of the antidumping duty order as applicable to the AT&M entity's exports or product and to prevent lifting the suspension of liquidation thereon so as to ensure that such merchandise does not escape assessment of antidumping duties should DSMC prevail in this action.

A final section 129 determination is a new and separate proceeding.  It stands apart from the agency determination it would alter or amend, such as a LTFV determination.  *See* Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc.

No. 103-316, Vol. 1 at 1025, 1027 (1994) ("SAA"), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4312-14.

A section 129 determination is prospective only and does not affect entries made prior to it.  *See* 19

U.S.C. § 3538(c)(1).  Hence, as the government argues, the final section 129 determination does not

moot DSMC's claims regarding entries made prior to that determination or affect the court's

jurisdiction over those earlier entries.  *See* Slip Op. 11-117 at 5.

       As to the prospective entries affected by the final section 129 determination, the

government argues DSMC's motion for preliminary injunction "does not arise from Commerce's

final LTFV determination" but is "based solely upon" the yet-to-be-implemented final section 129

determination.  Thus, the government argues, the court would not possess jurisdiction over those

entries in the event it is implemented.  It contends, rather, that the antidumping statute provides an

adequate remedy to contest revocation and the final section 129 determination, *see* 19 U.S.C.

§ 1516a(a)(2)(B)(vii), and "nothing in the statute requires that a section 129 proceeding be held in

abeyance pending the outcome of ongoing domestic litigation."  Def's Br. at 13.

       By the same token, however, nothing in the statute requires divestment of jurisdiction

over which a court is *presently* possessed including relief affecting prospective entries that may be

made moot by such revocation.  DSMC's challenges to the LTFV results, if successful, would affect

those entries.  If DSMC prevails here, the antidumping duty order will continue to apply to the

AT&M entity even in the absence of zeroing.  That is the circumstance to which DSMC's motion

for preliminary injunction is addressed, not the final section 129 determination itself.

       The government argues that the court lacks the right to enjoin revocation and

suspension of liquidation because Commerce's final section 129 determination has not been

"implemented" and is therefore not ripe for judicial review, but the fact that DSMC may have a separate right to challenge revocation resulting from implementation of the section 129 determination is rather beside the point.  Legal consequences clearly flow from the section 129 determination, *see* Slip Op. 11-137 at 3-4, and the court therefore finds it "final" in the sense contemplated by *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *see also Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967).

Commerce's regulations indicate that a company that receives a zero margin in an LTFV investigation will be excluded from its antidumping duty order.  *See* 19 C.F.R. § 351.204(e).  Excluding the AT&M entity from this antidumping duty order would ordinarily lift the suspension of liquidation and permit future entries of the AT&M entity's merchandise to liquidate free of antidumping duties.  A final judgment in this action which determines that the AT&M entity was not entitled to a separate rate would be ineffective as to those entries in that circumstance.  And yet this case is now on second remand to Commerce on the question of whether that entity is entitled to a separate rate.  If the AT&M entity is actually part of the PRC-wide entity, as argued by DSMC, then the margin for the AT&M entity would rise to 164.09 percent without regard to zeroing methodology.  This would effectively reverse any revocation made pursuant to the final section 129 determination.

B

The court finds that DSMC has met its burden under the four factors necessary for injunction.  Regarding enjoinder against lifting the suspension of liquidation, the court finds DSMC will suffer irreparable harm if entries are liquidated without antidumping duties that may ultimately

be determined owed as a result of this litigation.  Liquidation by CBP prior to a final decision on the

issue of whether the AT&M entity is entitled to a separate rate would deny a substantial portion of

the relief that DSMC seeks.  The court finds irreparable harm in that the statute would not be able

to provide meaningful relief to DSMC in that circumstance.  *See FMC Corp.*, *supra*, 3 F.3d at 431

("although there may be prospective relief available as to future entries, there is no prospective relief

-- or, otherwise stated, meaningful relief that can be applied retroactively subsequent to an appeal --

to correct an improper liquidation"); *Zenith Radio Corp. v. United States*, 710 F.2d 806, 811 (Fed.

Cir. 1983) ("the inability of reviewing courts to meaningfully correct the review determination is

irreparable injury that must be considered by the trial court"); *Qingdao Taifa Group Co. v. United

States*, 32 CIT 1169, 1170 (2008) ("[i]t has long been established that liquidation of entries after a

final determination of duties for a particular period, before the merits can be litigated, is sufficient

harm"), *aff'd*, 581 F.3d 1375 (Fed. Cir. 2009); *accord NSK Corp. v. United States*, 31 CIT 1962,

1965 (2007) (liquidation prior to completion of review results and revocation of order would leave

plaintiff without meaningful judicial remedy); *PPG Industries*, *supra*, 14 CIT at 21, 729 F. Supp.

at 861 (liquidation prior to the court's final decision would constitute irreparable injury).

   Regarding the DSMC's likelihood of success on the merits, the appellate court in

*Qingdao Taifa* noted that it "takes very seriously the Supreme Court's recent emphasis on the

importance of the likelihood of success in the preliminary injunction calculus" but it "also

recognize[d] that 19 U.S.C. § 1516a(c)(2) envisions the use of preliminary injunctions in the

antidumping context to preserve proper legal options and to allow for a full and fair review of duty

determinations before liquidation." *Qingdao Taifa*, 581 F.3d at 1382. *Some* likelihood of success

is required to be shown, albeit in light of the harm to be avoided. *See FMC Corp.*, 3 F.3d at 430

("[n]owhere in Zenith does it suggest that the harm suffered by [appellant] entitles [it] to an

injunction absent a showing of likelihood of success on the merits").   DSMC has now twice

persuaded the court on the validity of its claims pertaining to the AT&M entity's entitlement to a

separate rate, and the matter is now on its second remand to that agency for reconsideration.   Slip

Op. 12-147.   The court therefore finds that DSMC has satisfied its burden on the likelihood of

success.

        Regarding the balance of hardships, the court finds that any hardship to other parties

that would be caused by an injunction against lifting the suspension of liquidation is outweighed by

the irreparable harm to DSMC that would occur if an injunction were denied.   The defendant will

suffer no significant hardship as a result of this court granting the requested injunction against

liquidation, because the main effect of the injunction would be to require the continued suspension

of liquidation on incoming entries, and suspension of liquidation is at most an "inconvenience" to

the government. *See Timken*, 6 CIT at 81, 569 F. Supp. at 70-71; *Target Corp.*, Slip Op. 10-141 at

6.   Similarly, the delay in liquidation that would be occasioned by retaining the suspension of

liquidation would no more than inconvenience any interested private party. By contrast, DSMC's

right to obtain meaningful judicial review is at stake.   If the current litigation were to result in a

finding that the AT&M entity's LTFV margin is above *de minimis*, the harm to DSMC will be

irreversible if the AT&M entity's entries were liquidated in the interim, as no relief will be available

for such entries if they are already liquidated.   As such, the court finds that the balance of hardships

favors DSMC.

Considering the last factor, the court finds that the public interest is best served by effective enforcement of the trade laws, by ensuring that accurate amounts of antidumping duties are assessed on entries covered by antidumping duty orders, and by ensuring that entities, to the extent that they continue to sell merchandise at less than fair value, remain subject to antidumping duty orders. *See*, *e.g.*, *Smith-Corona Group v. United States*, 1 CIT 89, 98, 507 F. Supp. 1015, 1023 (1980) ("the public interest is best served by preventing entries subject to assessment of antidumping duties from escaping the correct amount of such duties"), *aff'd*, 713 F.2d 1568 (Fed. Cir. 1983), *cert. denied*, 465 U.S. 1022 (1984).  As the court held in *Qingdao Taifa*, "[t]here is also little doubt that the public interest is served by permitting the court to reach a considered decision regarding the agency's determination as to whether, and in what amount, duties are owed, before precluding the parties from litigating the issue." 32 CIT at 1171.  Here, as in that case, "[n]o harm comes to either side from preserving the *status quo*." *Id*. (italics added)  Moreover, it is always in the public interest to allow the courts to conduct a full examination of the facts and the law in any given case, to ensure that justice will prevail. *See Target Corp.*, Slip Op. 10-141 at 6.  Accordingly, the public interest would be best served "by the procedural safeguard of an injunction *pendente lite* to maintain the *status quo* of the unliquidated entries until a final resolution of the merits." *Smith-Corona Group*, 1 CIT at 98, 507 F. Supp. at 1023 (italics added).  Liquidation of subject imports prior to the completion of the appellate process may prevent the recovery of lawfully owed antidumping duties and prevent the exercise of meaningful judicial review.  Consequently, the court finds that granting the request for injunction against liquidation is in the public interest and would avoid these outcomes.

C

In its response to DSMC's motion for preliminary injunction, AT&M argues that DSMC's challenge to the LTFV results is protected by the process of administrative review of the antidumping duty order and entries of its merchandise that has been occurring.  AT&M points out that DSMC has separately challenged and enjoined liquidation of entries covered by the period of the now-completed first administrative review (*see* Court No. 13-00078), that the final second administrative review results are due shortly, that the third administrative review has been initiated, that Commerce continues to require the suspension of liquidation for entries subject to the latter two reviews.  DSMC may be protected with respect to entries prior to implementation of the final section 129 determination, but it is not with respect to entries occurring thereafter.  *See supra*.

AT&M also makes the point that by enjoining lifting of the suspension of liquidation, the court is interfering with the operation of 19 U.S.C. § 1675(a)(1) and (3), which provide that if no appeal is taken entries are to be liquidated as entered or in accordance with the administrative review results by operation of law.  Nowhere in the statutes, however, is it indicated that overlapping or complementary injunctive relief is impermissible.  The court has broad authority to enjoin liquidation.  19 U.S.C. § 1516a(c)(2) provides that this court "may enjoin the liquidation of some or all entries of merchandise covered by a determination of . . . the administering authority . . . upon a request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances."  *See*, *e.g.*, *SKF USA Inc. v. United States*, 28 CIT 170, 181, 316 F. Supp. 2d 1322, 1333 (2004) (power of this court sitting in equity complements Commerce's

administrative suspension), *vacated as moot*, 512 F.3d 1326 (Fed. Cir. 2008).  The court is not here ruling on a motion to tailor an injunction to accord with the operation of law.

D

The government and AT&M argue that DSMC's claim for an injunction against revocation of the antidumping duty order is premature, and that the court lacks jurisdiction to provide the requested relief.  The court agrees.  The governing statute provides DSMC the opportunity to seek judicial review of any final section 129 determination and of the administrative notice of revocation to exclude the AT&M entity from the antidumping duty order.  The necessary administration of U.S. trade laws requires interim action by Commerce.  *See supra; see also Diamond Sawblades Mfrs. Coal. v. United States*, 33 CIT ___, 650 F. Supp. 2d 1331 (2009), *aff'd*, 612 F.3d 1348 (Fed. Cir. 2010) (requiring Commerce, consistent with its statutory responsibilities and its affirmative LTFV determination, to enter an antidumping duty order when the U.S. International Trade Commission issues its affirmative material injury determination).  Previously, when faced with a similar question in the litigation over the Korean diamond sawblades dumping investigation, the court concluded that an "interlocutory" revocation of an antidumping duty order as a consequence of implementation of a final section 129 determination did not in that instance affect the legal predicate of the original affirmative LTFV determination.  The same holds true here.

In support of enjoining revocation DSMC argues that the effects of the section 129 determination cannot be categorized as "ordinary consequences of antidumping duty procedures" which ordinarily "do not constitute irreparable harm."  *See* Slip Op. 11-117 at 5; *see also*, *e.g.*, *Matsushita Elec. Indus. Co. v. United States*, 823 F.2d. 505, 509 (Fed. Cir. 1987) .  Relying on

*Hosiden Corp. v. United States*, 85 F.3d 589 (Fed. Cir. 1996), DSMC argues that unless Commerce

is restrained from excluding the AT&M entity from the antidumping duty order, it may "be without

recourse" if it ultimately prevails in this litigation because there are no "apparent" mechanisms for

restoring a company to an antidumping duty order's ambit once the company is excluded in

accordance with 19 C.F.R. § 351.204(e).  DSMC's Mot. Br. at 8, 13.  DSMC argues that the reason

Commerce must be enjoined from excluding the AT&M entity from the order is because unlike the

action regarding the Korean antidumping duty order the exclusion of only one company is at issue.

        That does not appear to be a meaningful distinction.   In the parallel Korean

antidumping matter, after liquidation was preliminarily enjoined the government filed a motion to

lift the injunction in order to "fully" implement a section 129 determination that resulted in zero

margins for all imports from Korea.  The motion was denied, Slip Op. 12-46 at 13, and in their

argument the domestic industry had taken the position that it did not need to separately challenge

revocation because the injunction against lifting the suspension of liquidation adequately protected

their interests.  The court agreed, finding that the DSMC maintained a right of reinstatement, and

also that Commerce's revocation was essentially interlocutory.

        Here, exclusion of the AT&M entity from the antidumping duty order would

constitute harm if the final result of this action is that the AT&M entity is ineligible for a separate

rate.  However, it does not appear that such action alone is "irreparable" or irreversible.  Unlike the

liquidation of entries of AT&M products or exports, the revocation of the order as to the AT&M

entity is subject to a meaningful remedy, should this action determine that the AT&M entity did not

qualify for a separate rate.  Both Commerce and the court retain the power to undo any such

interlocutory action as necessary to harmonize with a final decision on the merits of the underlying litigation.  *Cf.* 19 U.S.C. § 1516a(c)(3); Slip Op. 11-137 at 13.

A separate order to the above effect is issued herewith.


/s/  R. Kenton Musgrave
R.  Kenton Musgrave, Senior Judge

Dated: March 28, 2013
       New York, New York